IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>REBECCA GONZALEZ,<br><br>     Plaintiff/Relator<br><br>v.<br><br>FRESENIUS MEDICAL CARE NORTH<br>AMERICA, et al,<br><br>     Defendants. | § § § § § § § § § § § § § § | Cause No. EP-07-0247-PRM |
| REBECCA GONZALEZ,<br><br>     Plaintiff,<br><br>v.<br><br>FRESENIUS MEDICAL CARE NORTH<br>AMERICA and LARRY RAMIREZ<br><br>     Defendants. | § § § § § § § § § § § | |

## DEFENDANT ALFONSO CHAVEZ' MOTION FOR STAY
## WITH BRIEF IN SUPPORT

TO THE HONORABLE U.S. DISTRICT COURT:

Defendant ALFONSO CHAVEZ, M.D., by and through his undersigned counsel, files this Motion for Stay with brief in support, and in support thereof would respectfully submit the following:

1

# I.
## BACKGROUND

1.      On November 27, 2007, this Court unsealed and permitted service of a Complaint previously filed under seal by the Plaintiff, a qui tam relator.   Plaintiff filed her Second Amended Complaint against the Defendants ("Complaint") on February 7, 2008. *See Appendix, Exhibit C.*

2.      The Defendants named in the Complaint consist of ALFONSO CHAVEZ, M.D., ("Chavez"), and one corporate Defendant, FRESENIUS MEDICAL CARE NORTH AMERICA ("Fresenius").

3.      Through the Complaint, Plaintiff contends Defendants have violated the False Claims Act, 31 U.S.C §3730.  Generally, Plaintiff argues that Chavez, individually and in concert with Co-Defendant Fresenius, fraudulently billed the Medicare program and obtained reimbursement for (1) the delivery of dialysis services; (2) the prescription and use of pharmaceutical products; and (3) the delivery of clinical care by the use of at least two unlicensed, uncredentialed persons. *See Appendix, Exhibit C,* p.1.  Plaintiff claims the alleged uncredentialed persons to be Ramiro Devora and Arturo Orozco. *See Appendix, Exhibit C,* p. 10.  Plaintiff further alleges that in order to conceal the fraudulent delivery of these services, and to conceal the fraudulent billing from Medicare and Texas State surveyors and patients, Chavez and Fresenius falsified medical treatment and clinical operation records. *See Appendix, Exhibit C,* p. 2.  Plaintiff even goes so far as to allege that when Chavez and Fresenius learned of an investigation of them by the Federal Bureau of Investigation, they "embarked on a scheme to obstruct justice by concealing hand written medical records by uncredentialed persons [and by] creating additional fraudulent medical records concealing the unlawful participation of uncredentialed persons in the delivery of dialysis services." *See Appendix, Exhibit C,* p. 2.

2

4.     On November 13, 2007, prior to the filing of this Second Amended Complaint under the False Claims Act, a Grand Jury for the United States District Court for the Western District of Texas issued a Subpoena to Chavez, seeking all medical care records, patient records and billing records in order to investigate the same allegations raised by the Plaintiff in the Complaint under the False Claims Act.  Specifically, the Subpoena seeks the following documents:

A.     [All documentation] relating to the scheduling of patients of ALFONSO CHAVEZ, M.D., and related entities, and the recording of their visits and/or treatments;

B.     All records relating to any and all employees who have worked for or been employed by ALFONSO CHAVEZ, M.D., Nephrology Associates of El Paso, and affiliated or subsidiary businesses.

C.     Company and/or corporation records relating to FRESENIUS MEDICAL CARE, ALFONSO CHAVEZ, Nephrology Associates of El Paso, and/or individuals and/or companies acting on behalf or related to Alfonso Chavez, M.D., showing detailed ownership interests including contracts, agreements, profit sharing agreements.

D.     Any and all documents. . . relating to any methods of payment from FRESENIUS MEDICAL CARE; also any and all documents . . . relating to any methods of payment to RAMIRO DEVORA. . . .

E.     Patient files, medical claims, charts, lab reports, prescription orders, progress notes, physician notes, letters, messages, diagrams, memoranda, correspondence, medical histories, billings, medical claims, insurance claims, diagnosis, prognosis, contractual agreements, settlements, and other information relating to FRESENIUS MEDICAL CARE, ALFONSO CHAVEZ, M.D., and related entities, possessed or controlled by ALFONSO CHAVEZ, M.D., and related entities, for the period of 1/1/2005 to 4/1/2007.

A true and correct copy of the Subpoena is attached hereto as *Exhibit A* ("Subpoena"), and incorporated herein by reference as if fully set forth at length. *See Appendix, Exhibit A*.  On Saturday January 13, 2007, prior to issuance of the Subpoena, the Federal Bureau of Investigation raided the clinics referenced in the Complaint and executed two search warrants, seizing materials from both

facilities in order to investigate the allegations of Medicare fraud. *See Appendix, Exhibit A and Exhibit B.* Further, on or about January 19, 2007, Chavez was advised that he is a "target" of an investigation by the U.S. Attorney's Office and FBI regarding these same allegations. *See Appendix, Exhibit B.*

5.    The criminal investigation against the individual Defendant Alfonso Chavez is ongoing as this civil suit is pending. *See Appendix, Exhibit A and Exhibit B.* The criminal investigation and the civil litigation involve the same allegations. *See Appendix, Exhibit A* and *Exhibit C.* Chavez is innocent of any criminal charges that might be made against him by the United States Government.

## II.
## RELIEF REQUESTED

6.    Chavez requests the Court issue a stay of this civil suit against him, including discovery, until all criminal investigations and proceedings against him arising from these allegations of violations of the False Claims Act are finally concluded. As set forth herein, a stay is warranted because the pending criminal investigation would require Chavez to invoke his Fifth Amendment privilege in this civil suit, thereby hindering his defense of this civil suit and denying him due process.

7.    Chavez expressly reserves the right to bring counterclaims against the Plaintiff and third parties and to assert third-party claims if and when this civil suit proceeds.

## III.
## AUTHORITIES AND ARGUMENT

8.    It is well established that a court has the inherent power and discretion to stay civil proceedings when there are parallel criminal proceedings and the "interest of justice seems to require

such action." *See e.g., SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir.) *cert. denied,*

449 U.S. 993 (1980) (quoting *United States v. Kordel*, 397 U.S. 1, 12 (1970) (citations omitted)).

A stay is appropriate to prevent the rules and policies applicable to one suit from doing violence to

those pertaining to the other, and to avoid substantial and irreparable prejudice. *See generally*

*Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962); *SEC v. First Fin. Group of Tex., Inc.*, 659

F.2d 660, 668 (5th Cir. 1981).

9.      In the instant case, a stay of all civil proceedings is warranted because the subject of

the qui tam civil case which is brought in the name of the United States Government ex. relator

Rebecca Gonzalez and the ongoing criminal investigation involve the same subject matter.  The

Plaintiff acknowledges this fact in her Complaint:

> When Defendants gained specific knowledge that federal law enforcement
> investigators had opened an investigation, Defendants then embarked on a scheme
> to obstruct justice by concealing hand written medical records by uncredentialed
> persons [and by] creating additional fraudulent medical records concealing the
> unlawful participation of uncredentialed persons in the delivery of dialysis services.

*See Appendix, Exhibit C*, p. 2.  Additionally, the evidence required by Plaintiff to substantiate her

claims in this case is the same evidence subpoenaed by the FBI for purposes of their investigation:

generally, medical records, charts and billing records.  Accordingly, there is sufficient overlap

between this civil suit and the criminal investigation for the Court to conclude that Chavez'

testimony in the civil suit could aid in the criminal investigation against him. *See Appendix, Exhibits*

*A, B and C.*

10.     Because Chavez' testimony in the civil suit could aid in the criminal investigation

against him, Chavez' assertion of the Fifth Amendment privilege in this civil suit is not hypothetical

or unsubstantiated.  The Fifth Amendment privilege exists in both civil and criminal proceedings.

The privilege protects an individual from being compelled to answer official questions put to him in any "process, civil or criminal, formal or informal," where the answers might incriminate him in criminal proceedings. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 389 (citing *Baxter v. Palmigiano,* 425 U.S. 308, 316 (1976)). The Fifth Amendment privilege in civil litigation applies not only at trial, but also to the pleading stage and discovery stage, including document production. *National Acceptance Co. of America v. Bathalter,* 705 F.2d 924, 927 (7th Cir. 1983) (citing *United States v. Kordel,* 397 U.S. 1 (1970)); *Ohio v. Reiner,* 532 U.S. 17 (2001) (Fifth Amendment protection applies to <u>any</u> response that would provide a "link in the chain of evidence" needed to prosecute). If a party reasonably apprehends a risk of self-incrimination, he may claim the privilege though no criminal charges are pending against him, even if the risk of prosecution is remote. *Wehling v. Columbia Broad. Sys.,* 608 F.2d 1084, 1087 n.5 (5th Cir. 1979) *reh'g denied,* 611 F.2d 1026, 1027 (5th Cir. 1980). The validity of Chavez' assertion of his Fifth Amendment privilege in this civil suit is readily apparent as the pending criminal investigation arises from the same patient medical and billing records and alleged False Claim Act allegations as the civil suit. Further, Chavez remains a "target" under the FBI investigation. *See Appendix, Exhibit B.*

11.     In addition to his Fifth Amendment right to silence, an individual party in a civil suit has a constitutional "due process" right to the opportunity to adequately defend himself in a civil action. *Wehling,* 608 F.2d at 1087-88. The Supreme Court has emphasized that a party asserting its Fifth Amendment privilege should incur no penalty for his silence. *Id.* (citing *Spevack v. Klein,* 385 U.S. 511, 515 (1967)). A district court should not allow a procedure that requires a party to surrender one constitutional right in order to assert another. Forcing a litigant to invoke the Fifth Amendment in the course of civil suit can amount to a forfeiture of the "due process" right to a

judicial determination of the civil action. *See id.*; *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir.) *cert. denied*, 449 U.S. 993 (1980).

      12.     Because Plaintiff's civil suit is based upon alleged False Claim Act violations—the same issues and allegations that are the subject of the ongoing criminal investigation—allowing this civil suit to proceed against Chavez will create a significant risk of endangering and prejudicing his Fifth Amendment privilege rights. Stated another way, going forward with both the civil action and criminal investigation at the same time creates a constitutional dilemma for Chavez, even though he is innocent. On the one hand, if Chavez defends himself in this civil suit, he will run the severe risk of waiving his Fifth Amendment privilege against self-incrimination. Specifically, Chavez' answer, discovery responses, and testimony in this civil suit could to aid in the prosecution of the criminal proceeding. On the other hand, if Chavez asserts the Fifth Amendment privilege in this civil suit, his silence could be used by the opposing party for the purpose of drawing an adverse inference against him and thus prevent him from having the due process right to adequately defend himself from civil liability. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). This adverse inference effectively destroys Chavez' choice between his asserting his constitutional right against self-incrimination and preserving his right to defend this lawsuit. *See In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, No. MDL 1446, CIV A H-01-3624, CIV A H-01-3913, 2003 WL 25508889, at *2 (S.D. Tex. Mar 25, 2003) (mem.) (slip copy).

      13.     In order to resolve this constitutional dilemma, courts have long recognized that when the existence of simultaneous overlapping civil and criminal proceedings against a defendant would require the defendant to choose between his Fifth Amendment privilege against self-incrimination and his due process rights to defend the civil litigation, the civil suit should be stayed pending

completion of the criminal investigations and subsequent proceedings. *See Wehling*, 608 F.2d at 1087-88; *Dresser*, 628 F.2d at 1375; *Brumfield v. Shelton*, 727 F.Supp 282, 284 (E.D. La. 1989); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, No. MDL 1446, CIV A H-01-3624, CIV A H-01-3913, 2003 WL 25508889, at *2, *9 (S.D. Tex. Mar 25, 2003) (mem.) (slip copy) (holding that a stay of civil proceedings was proper due to overlapping issues in concurrent criminal and civil proceedings). Courts have further recognized that even when an indictment has not yet been handed down, a party under investigation by a Grand Jury faces the same risk of self-incrimination as an indicted party warranting a stay. *See Brumfield*, 727 F. Supp at 284 (stay required when party seeking stay was under investigation by Federal Grand Jury); *Wehling*, 608 F.2d at 1089 (staying a case until statute of limitations ran on criminal charges was preferable to requiring a party to choose between his silence and his civil lawsuit when party asserting Fifth Amendment privilege had "reason to believe" he was under investigation); *see generally Brunet Corp. v. Balogh*, 819 F.Supp. 811, 814-16 (E.D.Wis. 1993). The need for a stay is more urgent when the criminal investigation is ongoing. *United States v. Gieger Transfer Service, Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997).

14.    Further, Chavez' request to stay this civil suit is timely as it has been brought early in this civil case and thus has not been waived. The Fifth Amendment privilege protects an individual against involuntarily becoming a witness against himself and from being required to answer specific allegations in a civil complaint when the answers might incriminate him in the criminal proceeding. Requiring Chavez to provide a paragraph by paragraph answer to the Complaint filed in this case, as required by the Federal Rules, may compel Chavez to make judicial admissions or denials that could be used against him in the pending criminal proceeding. *See*

8

*Bathalter*, 705 F.2d at 927 n.5. Here, the allegations in the civil Complaint filed by Plaintiffs are so similar to and intertwined with the criminal investigation that an affirmative answer to almost any of the allegations could provide direct evidence or a link in the chain of evidence needed to prosecute, which will severely prejudice Chavez. *See Appendix, Exhibits A, B and C.* Thus, in the absence of a stay of this civil suit, Chavez is presented with a "catch-22" situation, notwithstanding his innocence.

15.    Additional factors support the issuance of a stay of this civil suit until conclusion of the parallel criminal investigation. If a stay is denied and this suit proceeds on the merits, Chavez may be forced to bring compulsory counterclaims against the Plaintiffs for substantial damages, *see* FED. R. CIV. P. 13, while the criminal proceeding is still pending. This could be viewed as problematic by the U.S. Attorney's office because some or all of the Plaintiffs may also be witnesses in the pending criminal investigation and any resulting proceeding. Further, although Plaintiff has an interest in a speedy resolution of her case, the need for discovery during the prosecution of her suit is not sufficient to warrant "eviscerating" Chavez' constitutional rights. *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, No. MDL 1446, CIV A H-01-3624, CIV A H-01-3913, 2003 WL 25508889, at *2 (S.D. Tex. Mar 25, 2003) (mem.) (slip copy)(citing *Volmar Distrib., Inc. v. New York Post Co.,* 152 F.R.D. 36, 40 (S.D.N.Y. 1993)) "Mere inconvenience and delay do not constitute undue burden and substantial prejudice warranting a denial of a stay." *Id.* Likewise, proceeding with this case, in light of the ongoing parallel criminal investigation, would severely hinder Plaintiff's discovery efforts. The potentially relevant medical and billing records seized by the FBI in their January 2007 raid on the dialysis clinics in question are not available. *See Appendix, Exhibit C and Exhibit B*. Further, the lack of testimony by Chavez would hinder Plaintiff's discovery

9

efforts as, from a review of the Complaint, Chavez appears to be a critical witness in the scheme alleged by Plaintiff.  Plaintiff alleges Chavez: (1) allowed uncredentialed  persons to provide improper services, (2) allowed the submission of allegedly fraudulent claims to Medicare; and (3) attempted to conceal the alleged fraud.  Chavez' right to assert his Fifth Amendment privilege could be an impediment to Plaintiff's discovery efforts.

WHEREFORE, PREMISES CONSIDERED, Defendant Alfonso Chavez, M.D. prays that the Court enter an order staying this civil suit against him, including all discovery from him, until such time as the concurrent criminal investigation and proceedings are concluded, and for such other and further relief to which he may show himself to be justly entitled.

Respectfully submitted,

**KEMP SMITH LLP**
P.O. Box 2800
El Paso, Texas 79999-2800
(915) 533-4424
(915) 546-5360 (FAX)

By:_____
RICHARD BONNER
State Bar No. 02608500

Attorneys for Defendant CHAVEZ

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29 day of February, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of the filing to all counsel of record.

_____
RICHARD BONNER

10